IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,      )<br>                                                          )<br>            Plaintiff,                        )<br>                                                          )<br>    v.                                              )<br>                                                          )<br>FREDRICK NIELSON, JR. and  )<br>SONNY SNIPE,                         )<br>                                                          )<br>            Defendants.                  )<br>_____) | Case Nos.  CR-05-129-E-BLW<br>                      CR-05-193-E-BLW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

The Court has before Defendant Nielson's Motion to Suppress (Docket No. 13 in Case No. CR-05-129-E-BLW) and Defendant Snipe's Motion to Suppress (Docket No. 17 in Case No. CR-05-193-E-BLW).  The Court held an evidentiary hearing on the motions on November 7, 2005, and now issues the following Memorandum Decision and Order.

## ANALYSIS

### I.  Emergency Doctrine

The decision whether to grant the motions to suppress turns on whether officers Rodriguez and Massey were justified to enter the Snipe residence without a warrant based on the emergency doctrine.  If they had the right to enter the

**Memorandum Decision and Order -- Page 1**

premises without a warrant and without the consent of the occupants, the evidence of drug use which they observed immediately after entering the premises is admissible and was properly used as the basis for a search warrant which they subsequently obtained.

The Ninth Circuit has adopted the following three part test for determining whether the emergency doctrine applies: (1) the officers reasonably believed that there was an emergency requiring immediate assistance; (2) the entry was not motivated by the desire to collect evidence; and (3) there was a reasonable basis to associate the home searched with the emergency. *See U.S. v. Deemer*, 354 F.3d 1130 (9th Cir. 2004); *see also U.S. v. Cervantes*, 219 F.3d 882 (9th Cir. 2000).

In this case, there is no question about the second and third prongs of the test. There is no evidence that the officers' entrance into the Snipe residence was motivated by a desire to collect evidence. Furthermore, the Snipe residence was specifically identified by the emergency call for help.

The only question is whether the officers reasonably believed that there was an emergency requiring immediate assistance. In this case, both officers Rodriguez and Massey testified that the dispatcher informed them, on a secure line used only for emergencies, that at approximately 5:00 a.m. on January 1, 2005, a hysterical male called, claiming to be at the Snipe residence, and requesting that police get to

**Memorandum Decision and Order -- Page 2**

the residence "now." The dispatcher's testimony and handwritten notes corroborate these events. Officer Massey also testified that he understood that the anonymous call was suddenly disconnected.

At that point, the officers had to assume the worst, but also had very little information. The officers testified that they then proceeded to the Snipe residence with lights and siren activated, but deactivated both prior to pulling into the Snipe residence. The officers testified that they cut their lights and siren in order to prevent a potential ambush. The Court finds these actions reasonable given the information possessed by the officers at that time.

The officers testified that they then saw a vehicle in the driveway and an individual go into the residence. Although Officer Rodriguez was familiar with the Snipe residence, he did not recognize the vehicle or the individual. This likely would have added to, not allayed, the officers' fears.

The only disputed testimony relates to what happened next at the door of the Snipe residence. First, there is some dispute over whether the screen door was left open or whether the officers opened it. This dispute is insignificant, however, because whether or not the officers opened the screen door and knocked on the inside door does not diminish the emergency or increase the intrusiveness of what they did. Second, there is some dispute over whether the officers announced their

**Memorandum Decision and Order -- Page 3**

presence. This too is insignificant because the officers were not required to announce their presence in an emergency situation.

The officers testified that Officer Rodriguez next knocked on the inside door. The door was apparently unlatched, because Officer Rodriguez's knocking caused it to open. At that point the officers could also hear individuals in the residence. Officer Rodriguez then looked around a "blind corner" into the kitchen/dining area.[1] The Court finds that at that point, given the nature of the call and the blind corner, it was reasonable for Officer Rodriguez to look around the corner to see what the occupants in the kitchen were doing.

At the request of Officer Rodriguez, Officer Massey then did a protective sweep of the residence to determine whether anyone was hurt and/or whether the unidentified caller was in the home. Officer Massey checked every room in the house except a bedroom that was locked. Mr. Snipe advised Massey that his father, who actually owned the home, kept some things stored there and that Snipe did not have a key. Snipe told Massey that he could kick the door in if he wanted to. Massey's failure to look in the locked bedroom during the protective sweep is somewhat troubling to the Court because it may suggest that Officer Massey did

---

[1] The argument might be made, that the officers could have waited at the door for someone to come to the door even after the door swung open after Rodriguez knocked. However, given the uncertainty of the situation presented to the officers, it was reasonable for them to look around the "blind corner" and assess the situation they were confronting.

**Memorandum Decision and Order -- Page 4**

not perceive the situation as being as much of an emergency as he claimed. However, Snipe's offer to allow Massey to kick down the door, likely allayed Officer Massey's concerns since it is highly unlikely that Snipe would allow an officer to kick down the door if he were trying to hide the contents of the room.

Under all these circumstances, the Court finds that the officers reasonably believed that there was an emergency requiring immediate assistance. Thus, the three requirements of the emergency doctrine were satisfied in this case, justifying the warrantless entry into the Snipe residence. For this reason, the Court will deny both motions to suppress.

## II. Fourth Amendment Standing

The Court will also deny Defendant Nielson's motion to suppress based on his lack of Fourth Amendment standing.[2] A defendant must have an expectation of privacy in the place searched in order to claim the protection of the Fourth Amendment. *See Minnesota v. Carter*, 525 U.S. 83, 88 (1998). To show an expectation of privacy, a defendant bears the burden of demonstrating the following two elements under the totality of the circumstances: (1) the defendant's subjective expectation of privacy in the area searched; and (2) the expectation is

---

[2] The Government conceded at the hearing that Defendant Snipe has standing in this matter.

**Memorandum Decision and Order -- Page 5**

one that society would recognize as objectively reasonable. *See U.S. v. Sarkisian*, 197 F.3d 966, 986 (9th Cir. 1999).

An individual whose presence on another's premises is purely commercial in nature has no legitimate expectation of privacy in that location. *U.S. v. Gamez-Orduno*, 235 F.3d 453, 458 (9th Cir. 2000) (citing *Minnesota v. Carter*, 525 U.S. 83, 90 (1998). However, "an overnight guest in another's home has a reasonable expectation of privacy for purposes of Fourth Amendment standing." *Id*. (citing *Minnesota v. Olson*, 495 U.S. 91, 96 (1990). Moreover, the Ninth Circuit has stated that "[w]hile overnight guest status is sufficient for Fourth Amendment protection, it may not be necessary. As a leading treatise has recently commented, the several opinions in *Carter* add up to a 'different majority . . . [that] actually embraced the position that a social guest would not have to be an overnight guest in order to have standing in the premises of another." *Id*. at 459 n. 8.

In *Gamez-Orduno,* the Ninth Circuit determined that the pivotal question is whether the situation is akin to that of the overnight guests in *Olson* or, instead, analogous to that of the defendants in *Carter. Id*. The Ninth Circuit ultimately held that the defendants in *Gamez-Orduno*, who were staying as guests in a trailer for food and rest, had a reasonable expectation of privacy even though the activity from which they were resting was commercial. *Id*. at 459.

**Memorandum Decision and Order -- Page 6**

Under the foregoing precedents, this Court finds that Nielson did not have a legitimate expectation of privacy in the Snipe residence on the morning of January 1, 2005.  Although Snipe testified that Nielson was a family friend who had stayed at the Snipe residence in the past, he did not testify that Nielson was at his residence as an overnight guest, or for the purpose of obtaining food, rest or shelter, on that morning.  Instead, based on testimony given at the suppression hearing, Nielson was there to meet up with strangers he had met earlier that morning or the night before, which is more akin to the scenario in *Carter*.  Under the totality of the circumstances, Nielson's expectation of privacy is not one that society would recognize as objectively reasonable.  Accordingly, the Court will further deny Nielson's motion to suppress because Nielson lacks Fourth Amendment standing.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED, that Defendant Nielson's Motion to Suppress (Docket No. 13 in Case No. CR-05-129-E-BLW) shall be, and the same is hereby, DENIED.

IT IS FURTHER ORDERED, that Defendant Snipe's Motion to Suppress (Docket No. 17 in Case No. CR-05-193-E-BLW) shall be, and the same is hereby, DENIED.



DATED: **November 10, 2005**

_____
B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order -- Page 8**